595 A.2d 1320

W. Guy BEARFIELD and Betty J. Bearfield

v.

James F. HAUCH, M.D., Appellee.

Appeal of W. Guy BEARFIELD, Appellant.

Superior Court of Pennsylvania.

Argued May 15, 1991.

Decided Sept. 4, 1991.

Bernard J. Hessley, Warren, for appellant.

William P. Delaney, Erie, for appellee.

Before CAVANAUGH, DEL SOLE and CERCONE, JJ.

DEL SOLE, Judge:

This is an appeal from an order granting Appellee, Dr. Hauch's motion for Summary Judgment in a case in which Appellants sought damages based upon the theories of lack of informed consent and *res ipsa loquitur*. We affirm.

In their Complaint Appellants allege that in a surgical procedure Dr. Hauch removed Appellant, Guy Bearfield's gallballader. Following the surgery Mr. Bearfield experi-

enced severe pain at the site of his surgical incision. A second surgery was later performed to repair nerve endings which were severed or sutured during the first operation. It is specifically alleged that Dr. Hauch failed to obtain Mr. Bearfield's informed consent and that he performed acts constituting negligence. Mrs. Hauch's claim, based upon a loss of consortium, is derivative to her husband's cause of action.

Through requests for admission filed upon behalf of Dr. Hauch, Appellants admitted that they did not intend to have an expert testify on their behalf. Following this admission Dr. Hauch filed a Motion for Summary Judgment. The trial court concluded that absent some expert testimony in support of either legal theory Appellant could not succeed in proving their case before a jury, and an award of Summary Judgment in favor of the defendant was appropriate.

On appeal the Appellants challenge the trial court's ruling. With respect to the their theory of recovery based upon lack of informed consent, they argue that no expert testimony was necessary to establish their case where Mr. Bearfield was never advised of any risks of his surgery including the risk that a nerve would be incarcerated in the incision.

Appellants claim must fail. If Appellants were simply able to prove that Mr. Bearfield was not properly advised of the risks attendant to the surgery he was about to undergo and that he experienced problems following the surgery, it would be insufficient to establish that Appellants are entitled to recover based upon a lack of informed consent. It is necessary to Appellants case for them to prove that the problems Mr. Bearfield experienced following his surgery were a medically recognized risk of that surgery. Although expert medical testimony would be necessary to inform the jury that the ultimate result was a risk of the surgery, expert testimony is not needed to demonstrate that the risk involved is of such a nature that it must

be disclosed to the patient. *Clemons v. Tranovich*, 403 Pa.Super. 427, 589 A.2d 260 (1991).

A physician has a duty to disclose to a patient those risks which a reasonable person would consider material to his or her decision to undergo treatment. *Festa v. Greenberg*, 354 Pa.Super. 346, 511 A.2d 1371 (1986). In *Sagala v. Tavares*, 367 Pa.Super. 573, 533 A.2d 165, 167 (1987) we stated:

> [I]n determining whether a physician breached his duty to his patient, 'the standard of care is not what a reasonable medical practitioner would have done in the situation but whether the physician disclosed those risks which a reasonable man would have considered material to his decision to whether or not to undergo treatment.' *Festa, supra,* [354 Pa Super.], at 511 A.2d at 1375. Materiality is established by a two step process. *First, the trier of fact must be supplied with expert information as to the nature of the harm and the probability of it occurring.* However, it is the trier of fact, not the expert, who must decide the materiality of the risk involved and whether the probability of that type of harm is a risk which a reasonable patient would consider in rendering a decision on medical treatment.

In this case where Appellants promised to offer no expert testimony that the harm suffered by Mr. Bearfield was a known risk of the procedure he underwent, a jury would not be able to determine that the injury was a known risk which should have been disclosed.

Expert testimony was also not offered in support of Appellants' negligence claims based upon the theory of *res ipsa loquitur*. Appellants assert that such testimony was not necessary since the jury would be able to conclude, from their common knowledge, that this injury would not have occurred in the absence of negligence.

The doctrine of *res ipsa loquitur* does allow a jury to infer the existence of negligence and causation where the injury does not ordinarily occur in the absence of

negligence. *Clemons v. Tranovich, supra.* Expert medical testimony only becomes necessary in such a case, to indicate that the injury would not have occurred absent negligence, when there is no fund of common knowledge from which laypersons can reasonably draw the inference or conclusion of negligence. *Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 437 A.2d 1134 (1981).

In *Gallegor by Gallegor v. Felder,* 329 Pa.Super. 204, 478 A.2d 34 (1984) the absence of expert medical testimony was at issue in a case in which the plaintiff sought to establish his case utilizing the doctrine of *res ipsa loquitur.* Considering circumstances where a boy suffered injuries to his facial nerve during an ear operation, the court remarked that "no inference of negligence arises merely because a surgical operation terminates in an unfortunate result which might have occurred even though the proper care and skill had been exercised." 329 Pa.Superior Ct. at 210, 478 A.2d at 37. The court held that the the harm suffered could not be found to be so simple and obvious that a conclusion of negligence could be reached by a layperson based upon ordinary experience and comprehension. It stated: "This is simply not the equivalent of a situation in which a surgical tool is negligently left inside a person after an operation." *Id.* In view of this conclusion and since no evidence was offered to show that the harm which occurred to the child would not have occurred in the absence of medical malpractice the trial court's grant of a compulsory non-suit was affirmed.

■ We too find that this case does not involve a situation in which a jury could make a conclusion of negligence based upon ordinary experience and comprehension. We agree with the position of Dr. Hauch who maintains that a jury does not have within their common knowledge the resources to determine whether a nerve entrapment of a tenth intercostal nerve during a gallbladder operation would not occur in the absence of negligence or is perhaps an unavoidable consequence of this type of surgery. Expert guidance would be necessary to ensure the jury did not reach a decision based upon pure speculation. Because we

agree with the trial court that expert testimony was necessary to establish that the injury would not have occurred absent negligence, we conclude the award of Summary Judgement was appropriately entered.

Summary Judgment affirmed.