# Venneri v. Snyder

C.P. of Bucks County, no. 93-009940-23-2.

*Eric Gavin Marttila,* for plaintiffs.
*Bruce S. Pancio,* for defendant Lori Snyder.
*Dean P. Arthur,* for defendant Linda Schindele.

LAWLER, *J.,* May 16, 1997—Plaintiffs appeal the order of this court dated March, 27 1997, denying their motion for post-trial relief, following a jury verdict in favor of defendants. Specifically, plaintiffs moved for entry of judgment n.o.v. or in the alternative for a new trial. Pursuant to Pa.R.A.P. 1925(b), plaintiffs complain of the following matters on appeal:

"(A) The trial court erred and abused its discretion in refusing to permit plaintiffs to inquire into potential juror bias during voir dire examination, precluding them from exercising their right to obtain a competent, fair and impartial jury.

"(B) It being undisputed that an intersectional collision occurred between two motor vehicles, one driven by each of the defendants, the trial court erred in refusing to grant plaintiffs' motion for judgment n.o.v. and/or a new trial, where the jury verdict that neither defendant was negligent was against the clear weight of the evidence and one as to which no two reasonable minds could fail to agree was improper."

This case involves a minor collision, which occurred on April 18, 1992, between two cars moving at slow rates of speed in the private parking lot of the Korman Suites apartment complex. Plaintiffs, Arlene Maiorana and Jacqueline Venneri, were passengers in defendant Linda Schindele's (plaintiff Maiorana's daughter and plaintiff Venneri's sister's) car. Defendant Schindele's car was traveling on the main road within the apartment complex when the right fender or headlight of the car driven by defendant Lori Snyder (N.T. vol. I at 35; vol. II at 41) struck it in the back passenger side fender

and back of the car. (N.T. vol. I at 34.) The jury found that neither defendant was negligent. Our reasons for denying plaintiffs' motion for post-trial relief follow.

### A. *This Court Properly Refused Plaintiffs' Proposed Questions During Voir Dire*

Plaintiffs argue that it was error for this court to refuse to allow them to ask the following questions during voir dire:

"(1) Do any of you think it is immoral or otherwise wrong to award money damages for losses caused by the negligence or conduct of another?

"(2) Are you aware of efforts directed toward changing the tort system, *i.e.,* the method by which injured people are compensated? If so, please explain any opinions you have formed on this issue.

"(3) Do any of you believe that there is too much money being awarded to injured plaintiffs in lawsuits these days?

"(4) Without having heard any of the evidence or law which applies in this case, do you have a limit on the amount of money you would award as damages to an injured person?

"(5) Does anything concern you about personal injury lawsuits in which money damages are being sought? If so, what are your concerns?

"(6) If the jury in this case were to award money damages, would you feel that it would have some economic effect on you personally?

"(7) If you find that the plaintiffs have suffered substantial damages as a result of the negligence of the defendants, would any of you have any difficulty or reluctance in awarding them a substantial amount of money in compensation?"

The sole purpose of voir dire is to secure a fair, competent and impartial jury. *Bohner v. Stine,* 316 Pa. Super. 426, 434, 463 A.2d 438, 442 (1983). Its purpose is not to provide a better basis upon which a party may exercise peremptory challenges. *Commonwealth v. Smith,* 518 Pa. 15, 36, 540 A.2d 246, 256 (1988). Indeed, it is inappropriate to use voir dire to gain information for the purpose of making peremptory challenges. *Bohner, supra* at 436, 463 A.2d at 443. It is also improper for attorneys to use voir dire as a tool to ascertain the effectiveness of a potential trial strategy. *Commonwealth v. Paolello,* 542 Pa. 47, 70, 665 A.2d 439, 451 (1995). In the instant case, because plaintiffs' proposed questions were not directed to securing a fair, competent and impartial jury, but rather to ascertaining which jurors might be disinclined to award the plaintiffs substantial damages and for the purpose of making peremptory challenges, we refused to allow them.

In *Bohner, supra* at 435, 463 A.2d at 442, the trial court disallowed the question "Whether, if appropriately satisfied under the evidence and the law, any member of the jury would, for any reason, hesitate to award a substantial verdict." On appeal, the Superior Court expressly ruled it "inappropriate to ask whether prospective jurors would be able to render a substantial verdict." *Id.* at 436, 463 A.2d at 443. In *Hoffman v. Sterling Drug,* 374 F. Supp. 850, 859 (M.D. Pa. 1974), a federal court rejected an identical question for the same reason. In the instant case, because proposed question 7 resembles the questions found inappropriate in *Bohner* and *Hoffman,* no error was committed in refusing it.

Questions 1, 3, 4, 5 and 6 are similar in nature. Because they also inquire as to the jurors' likelihood

of awarding a substantial verdict, it was likewise proper to refuse them.

In *Bohner,* the trial court also disallowed the following question:

"Have any of the prospective jurors read large advertisements in national news magazines advocating smaller damage awards or changes in our system of law which would limit a plaintiff's right to recover for personal injuries?" *Id.* at 435, 463 A.2d at 442.

The Superior Court held that the question "invited responses which would not necessarily reflect a juror's *fixed* inability to render an impartial judgment. . . ." *Id.* at 436, 463 A.2d at 443. (emphasis in original) The court therefore determined that "the only use for the question could have been to gain information for peremptory challenge purposes which is inappropriate." *Id.* In the instant case, question 2 resembles the question which the court found improper in *Bohner.*

The purpose of voir dire is "not to empanel a jury sympathetic to positions or beliefs of either party." *Paolello, supra* at 70, 665 A.2d at 451. Thus, counsel should not be permitted to ask questions designed to disclose a juror's attitudes. *Commonwealth v. England,* 474 Pa. 1, 7, 375 A.2d 1292, 1295 (1977). In *Paolello,* the defendant was on trial for murder, where evidence of the defendant's alcoholism and the victim's death from alcohol poisoning was pertinent. Our Supreme Court affirmed the trial court's refusal to allow defense counsel to question jurors regarding their opinions, attitudes and involvement with alcohol.

In *England, supra,* our Supreme Court affirmed the trial court's refusal to allow a question by defense counsel designed to determine what a juror's personal reaction would be if the defendant elected not to testify in his own behalf. The question asked whether the juror

privately agreed with two fundamental concepts of constitutional law.

In the instant case, plaintiffs' proposed questions were designed to elicit the jurors' personal views with respect to awarding large damage verdicts. Their sole purpose was to identify jurors who might be disinclined to award substantial damages so that plaintiffs' counsel could make use of peremptory challenges against those jurors. Accordingly, it was proper for this court to disallow the questions.

### B. *The Verdict That Neither Defendant Was Negligent Was Not Against the Clear Weight of the Evidence* [1]

We may not disturb the jury's verdict unless it is so contrary to the evidence as to shock one's sense of justice. *McDole v. Bell Telephone Co. of Pennsyl-*

---

1. In response to plaintiffs' post-trial motion, defendant Schindele argued that plaintiffs have waived their claim that the verdict was against the weight of the evidence because they failed to request a correction of the verdict before the jury was discharged. Defendants cited *Curran v. Greate Bay Hotel and Casino,* 434 Pa. Super. 368, 643 A.2d 687 (1994), *alloc. denied,* 539 Pa. 678, 652 A.2d 1323 (1994); *Picca v. Kriner,* 435 Pa. Super. 297, 645 A.2d 868 (1994), *alloc. denied,* 539 Pa. 653, 651 A.2d 540 (1994); and *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974). In those cases, the courts found the jury's verdict incredible, but ruled that the plaintiffs had waived their claims on appeal by failing to object after the jury returned its verdict. In *Picca,* the court noted that, when a plaintiff objects before the jury is discharged, the trial court can then instruct the jury that its verdict makes no sense and ask it to reconsider its decision. The Superior Court held that the rule requiring a plaintiff to object before the jury is discharged should not be limited to cases where the jury's verdict is inconsistent, but "should apply whenever the jury returns a verdict which is objectionable for any reason." *Id.* at 303, 645 A.2d at 871.

*vania,* 441 Pa. Super. 88, 93, 656 A.2d 933, 935 (1995). The evidence must be such that no two reasonable minds could differ that the outcome should have been rendered in the movant's favor. *Id.* and *Moure v. Raeuchle,* 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992). In weighing the evidence, this court must view all the testimony in the light most favorable to the verdict winner and give that party the benefit of all reasonable inferences. *Id.* Also, in weighing the evidence, the jury is free to believe all, part of, or none of the testimony of any witness. Any inconsistences in the testimony are for the jury to reconcile. *Weidemoyer v. Swartz,* 407 Pa. 282, 285, 180 A.2d 19, 21 (1962).

Plaintiffs argue that, because two cars were involved in the accident, at least one of them must have been negligent. However, the law in this Commonwealth is to the contrary. Rather, negligence is never presumed, and the mere happening of an accident is not evidence of negligence. *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978); *Mohler v. Jeke,* 407 Pa. Super. 478, 595 A.2d 1247 (1991); *Churilla v. Barner,* 269 Pa. Super. 100, 409 A.2d 83 (1979). Although in this case plaintiffs established that an accident occurred, they continued to bear the burden of proving that one or both of the defendants' negligence caused the accident. See *Mohler*

---

However, subsequent cases have found that language to be dictum and have held that the waiver rule applies only to claims of inconsistency and not to claims that the jury's verdict is against the weight of the evidence. See *e.g., Fillmore v. Hill,* 445 Pa. Super. 324, 665 A.2d 514 (1995), *alloc. denied,* 544 Pa. 609, 674 A.2d 1073 (1996); *Cipolone v. Port Authority Transit System,* 667 A.2d 474 (Pa. Commw. 1995), *alloc. denied,* 544 Pa. 663, 676 A.2d 1202 (1996). Accordingly, we declined to rule that plaintiffs waived this claim and considered it on its merits.

*supra* at 489, 595 A.2d at 1253. They failed to carry that burden.

There was sufficient evidence from which the jury could have concluded that plaintiffs failed to bear their burden of proving that either defendant's negligence caused the accident. For example, plaintiff Maiorana testified that the area where the accident occurred had parked cars which should not have been parked there. N.T. vol. I at 30. She also testified that there were trees and hedges in the area and that the hedges blocked their view. *Id.*, vol. I at 33 and 66. Plaintiff Venneri also testified that hedges were growing at the inter-section where the accident occurred, blocking their view. *Id.*, vol. I at 86, 109. Plaintiffs' attorney pointed out during his cross-examination of defendant Snyder that high bushes blocked her view. N.T. vol. II at 53. There were no traffic controls at the site of the accident. N.T. vol. II at 31-32.

Plaintiff Maiorana testified that, prior to the accident, she did not see the car which hit them (N.T. vol. I at 33-34) and that there was no indication that an accident would occur. *Id.* at 34. She further testified that de-fendant Schindele could not have done anything in an attempt to avoid the accident because it happened so fast. N.T. vol. I at 34. Similarly, plaintiff Venneri testified that neither she, plaintiff Maiorana nor their driver, defendant Schindele, saw defendant Snyder's car prior to impact, that defendant Schindele could not have taken evasive action to avoid the accident (N.T. vol. I at 87), and that there was no warning that the accident would occur. N.T. vol. I at 110.

Defendant Schindele testified that she did not see defendant Snyder's car before the accident, although she looked both ways to see if cars were coming in either direction. N.T. vol. II at 63 and 65. Defendant

Snyder testified that, after she pulled out of her parking space, she stopped and looked left (in defendant Schindele's direction) for traffic and saw no cars. N.T. vol. II at 38, 48-49. When she moved forward only a few feet, defendant Schindele's car went in front of her and she immediately slammed on her brakes. N.T. vol. II at 39. Defendant Snyder testified that she did not see defendant Schindele's car before it was directly in front of her. *Id.* at 47-48.

At the time of the accident, both cars were moving very slowly. Because defendant Schindele had only proceeded a "very short distance" after stopping at the stop sign on Pasqualone Boulevard before she turned into the Korman Suites parking lot, she was not going very fast, less than 10 miles per hour. N.T. vol. II at 62-63, 66.

Plaintiffs make much of the fact that, after the accident, defendant Snyder apologized. See N.T. vol. I at 36-37, 65, 89. However, defendant Snyder testified that she was upset because she was pregnant and had a high-risk pregnancy. *Id.* at 42. She denied stating that she was not watching where she was going. *Id.* at 54.

Negligence is the failure to do something which a reasonably careful, prudent person would do or the doing of something which a reasonably careful person would not do in light of all the surrounding circumstances.[2] *Mohler, supra,* 595 A.2d at 1252. We cannot say that no two reasonable minds could differ that one or both of the defendants were negligent. In the instant case, the unequivocal evidence is that both cars were

---

2. Plaintiffs brought to this court's attention this definition of negligence through their proposed point of charge no. 5, which this court gave to the jury. See N.T. 7/31/96 at 4.

See also, Pa.S.S.J.I. (Civ. 3.01).

traveling in a parking lot at very slow rates of speed, that both drivers looked before proceeding, that neither driver saw the other prior to the accident, that bushes may have obstructed their views, that cars were parked where they should not have been in the area where the accident occurred, and that there was nothing defendant Schindele could have done to have avoided the accident. From this evidence, in light of all the surrounding circumstances, the jury could reasonably have concluded that neither defendant failed to do something that a reasonably careful, prudent person would have done and that neither defendant did something that a reasonably careful, prudent person would not have done. In other words, the jury could have reasonably concluded that, because of the circumstances, neither defendant could have avoided the accident. We refused to do what this jury did not, *i.e.* to presume negligence simply because of the mere happening of an accident.

For the foregoing reasons, we denied plaintiffs' motion for post-trial relief and entered judgment upon the verdict of the jury.