J-A23016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MOSHE ARBIV, ZURIEL NAGAR AND DAVID LACKNER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 340 EDA 2020 |
| YEHUDA EVRON, DIANE HART, PAUL PINSKI, ABILO COSTERIA,  CARMINE FAZZOLARI, KENNETH HOLLAND AND SEAN P. MAYS, ESQUIRE | : | |

Appeal from the Judgment Entered December 16, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  180300011

BEFORE: KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED JULY 07, 2021**

Appellants Moshe Arbiv, Zuriel Nagar, and David Lackner (Buyers) appeal from the judgment entered in favor of Appellees Yehuda Evron, Diane Hart, Paul Pinski, Abilo Costeria, Carmine Fazzolari, and Kenneth Holland (Sellers), following a bench trial.[1]  Buyers raise several challenges to the trial court's interpretation of the commercial real estate agreement at issue.  For the reasons that follow, we vacate the judgment and remand for further proceedings.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] By agreement of the parties, Sean P. Mays, Esquire, was dismissed from the suit and therefore is not a party to this appeal.

We adopt the facts and procedural history set forth in the trial court's opinion. *See* Trial Ct. Op., 3/9/20, at 1-6. Briefly, this case involves a breach of a commercial real estate purchase agreement and the application of an "as is" addendum to the agreement. *Id.* at 1. Specifically, Buyers claimed they properly declared the agreement void because of an incorrect zoning classification. Am. Compl. at ¶ 19. As a result, Buyers requested return of their deposit, and asserted Sellers breached the agreement by refusing to return the deposit. *Id.* at ¶¶ 20, 22. We add that no broker was involved and although the parties signed the agreement, ultimately no property changed hands. Trial Ct. Op. at 3; *see also* Ex. A to Am. Compl. (titled "Agreement for the Sale of Commercial Real Estate," which has a handwritten "X" through the section for listing the identities of any Pennsylvania licensed broker participating in the transaction). We quote the relevant part of the "as is" addendum below.[2]

_____

[2] Although not discussed by the parties or the trial court, the agreement provides that Buyers must exercise due diligence: "It is Buyer's responsibility to determine that the condition and permitted use of the property is satisfactory within 0 days (30 if not specified) from the Execution Date to conduct due diligence (Due Diligence Period), including verifying the . . . zoning classifications . . . ." Ex. A. to Am. Compl. "Buyer may, prior to the expiration of the Due Diligence Period, terminate this Agreement . . . ." *Id.* Also attached to the complaint was an exhibit purporting to be a printout from a government website listing the correct zoning classification for the property at issue. Ex. C. to Am. Compl. No party explained why the agreement was executed if the correct zoning designation was apparently publicly available.

After a bench trial, on April 17, 2019, the trial court ruled in favor of Sellers and against Buyers. On April 24, 2019, Buyers timely filed a post-trial motion and an amended post-trial motion on April 26, 2019, which requested judgment notwithstanding the verdict (JNOV). Buyers raised several issues in their post-trial motion, but did not cite, discuss, or otherwise reference 21 P.S. § 613.1.[3] It was in Buyers' brief in support of their post-trial motion, however, that Buyers first mentioned Section 613.1, and argued that Section 613.1 supported their claim for post-trial relief. Buyers' Post-Trial Brief, 6/19/19, at 3-4, 11-13. On December 16, 2019, the trial court denied Buyers' amended post-trial motion. Trial Ct. Op., 12/13/19.

Buyers timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement. On March 9, 2020, the trial court filed a Rule 1925(a) opinion, which asserted error and requested that this Court should reverse and remand for entry of JNOV in favor of Buyers and against Sellers.

Buyers raise the following issues:

1. Whether this Court should remand this case to the [trial court] to allow entry of an order consistent with the trial court's Pa.R.A.P. 1925(a) opinion dated March 9, 2020, in which the trial court judge acknowledged that she had erred in finding in favor of [Sellers] and should have granted [Buyers'] post-trial motion and entered judgment notwithstanding the verdict in favor of [Buyers].

2. Whether this Court should adopt the trial court's reasoning in its Rule 1925(a) opinion that the agreement and addendum

---

[3] Buyers did not raise Section 613.1 at trial.

- 3 -

should be interpreted to permit the Buyers to declare the agreement void for failure to state the correct zoning classification for the property in paragraph 6 of the agreement.

3. Whether the [c]ourt erred, as a matter of law, in finding that an "as is" addendum to the agreement of sale excused the misstatement of [Sellers] of the zoning classification in paragraph 6, which contains language mandated by statute 63 P.S. § 455.608(b) allowing the Buyer[s] to terminate the agreement and receive back all deposit monies without the requirement of further court action if the zoning classification is not stated.

4. Whether the [c]ourt erred, as a matter of law, in refusing rescission of the agreement and return of the deposit where 21 P.S. § 613.1 requires that, in cities of the first class, all agreements for sale of real property contain the correct zoning classification and conclusively presumes that the owners represented and warranted that the zoning classification was correct.

5. Whether the [c]ourt erred when it construed the "as is" addendum to supersede and negate the express warranty as to the zoning classification and remedy of rescission set forth in Paragraph 6 of the agreement.

6. Whether the [c]ourt erred in finding in favor of [Sellers] based upon the evidence at trial and applicable law.

Buyers' Brief at 6 (some formatting altered).

**Granting Relief Based Solely on the Trial Court's Reasoning**

In support of their first two issues, Buyers request that we adopt the trial court's reasoning in its Rule 1925(a) opinion and remand for further proceedings. In support of their first issue, Buyers argue that this Court should remand the case for the trial court to enter an order consistent with its Rule 1925(a) opinion, in which the trial court asserted error in finding for Sellers and against Buyers. *Id.* at 18. Buyers quote the trial court's reasoning

- 4 -

in its Rule 1925(a) opinion and argue that remand would promote judicial efficiency by mooting the Buyers' appeal. *Id.* at 20. Buyers claim that no party would be prejudiced because, among other reasons, the damages at issue are presently held in escrow. *Id.* at 20-21. For their second issue, Buyers similarly argue that this Court should adopt the trial court's reasoning in its Rule 1925(a) opinion and reverse the trial court's decision. *Id.* at 21.

Initially, we note that Appellant did not cite or discuss any legal authorities permitting this Court to remand for entry of an order consistent with the trial court's Rule 1925(a) opinion. Nonetheless, it appears this Court has the authority to remand for the trial court to enter an order reversing itself and enter judgment in favor of Buyers, while retaining jurisdiction to resolve the parties' appeal. *See* Pa.R.A.P. 1701(a), (b)(5) (stating that after an appeal has been taken, the trial court may no longer proceed, but may "[t]ake any action directed or authorized by an appellate court"). However, under the unique circumstances of this case, we conclude that remanding this matter for the trial court to reverse itself and restart the appellate briefing process anew for all of Buyers' remaining issues would not "secure the just, speedy, and inexpensive determination" of this appeal. *See* Pa.R.A.P. 105(a).

**Pennsylvania Real Estate Licensing and Registration Act (RELRA)**

Buyers' third argument is that the "as is" addendum did not negate Buyers' right to void the real estate agreement under RELRA because the agreement failed to state the correct zoning classification. Buyers' Brief at

- 5 -

22. In Buyers' view, RELRA requires disclosure of the zoning classification. *Id.* at 22-23. According to Buyers, Sellers' failure to disclose the correct zoning classification permitted Buyers to void the real estate contract. *Id.* at 23. In support, Buyers discuss *Roddy, Inc. v. Thackray Crane Rental, Inc.*, 2001 WL 1807953 (C.C.P. Phila. 2001), and *Meyer v. Gwynedd Dev. Grp., Inc.*, 756 A.2d 67 (Pa. Super. 2000). *Id.* at 24-25. Buyers reason that although no brokers were involved in the instant transaction, "it is clear that the legislature intended that the statutorily required language [of zoning classification] be included in all agreements of sale of real property, not just those transactions which involve" a broker. *Id.* at 27. Buyers conclude that because the agreement did not disclose the "correct zoning classification" for the property, Buyers had the right to void the agreement under RELRA notwithstanding any "as is" addendum.[4] *Id.* at 28.

We state the standard of review as follows:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.

_____

[4] Sellers counter that RELRA does not apply because no broker was involved. Sellers' Brief at 11.

***Amerikohl Mining Co. v. Peoples Nat. Gas Co.***, 860 A.2d 547, 549-50 (Pa.

Super. 2004) (citations omitted and formatting altered).

When reviewing an order resolving a post-trial motion for JNOV, our

standard of review is as follows:

> An appellate court will reverse a trial court's grant or denial of a JNOV only when the appellate court finds an abuse of discretion or an error of law. Our scope of review with respect to whether [JNOV] is appropriate is plenary, as with any review of questions of law.

> In reviewing a motion for [JNOV], the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, a [JNOV] should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner.

> \*     \*     \*

> Questions of credibility and conflicts in the evidence are for the fact-finder to resolve and the reviewing court should not reweigh the evidence. If there is any basis upon which the [fact-finder] could have properly made its award, the denial of the motion for [JNOV] must be affirmed.

***Braun v. Wal-Mart Stores, Inc.***, 24 A.3d 875, 890-91 (Pa. Super. 2011)

(*per curiam*) (citations omitted and formatting altered).

In ***Phelps v. Caperoon***, 190 A.3d 1230 (Pa. Super. 2018), this Court

summarized the well-settled rules of statutory construction:

> The Statutory Construction Act, 1 Pa.C.S. §§ 1901-1991, sets forth principles of statutory construction to guide a court's efforts with respect to statutory interpretation. In so doing, however, the Act expressly limits the use of its construction principles. The purpose of statutory interpretation is to ascertain the General Assembly's intent and to give it effect. In discerning that intent,

- 7 -

courts first look to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent and not look beyond the statutory language to ascertain its meaning. Courts may apply the rules of statutory construction only when the statutory language is not explicit or is ambiguous.

We must read all sections of a statute together and in conjunction with each other, construing them with reference to the entire statute. When construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections. Statutory language must be read in context, together and in conjunction with the remaining statutory language.

Every statute shall be construed, if possible, to give effect to all its provisions. We presume the legislature did not intend a result that is absurd, impossible, or unreasonable, and that it intends the entire statute to be effective and certain. When evaluating the interplay of several statutory provisions, we recognize that statutes that relate to the same class of persons are *in pari materia* and should be construed together, if possible, as one statute.

Also, when interpreting a statute we must listen attentively to what the statute says, but also to what it does not say.

**Phelps**, 190 A.3d at 1236 (quoting **Retina Assocs. of Greater Phila., Ltd.**

**v. Retinovitreous Assocs., Ltd.**, 176 A.3d 263, 270 (Pa. Super. 2017)

(alteration omitted)).

In relevant part, Section 455.302 of RELRA states:

No action or suit shall be instituted, nor recovery be had, in any court of this Commonwealth by any person for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this act by a person other than a licensed broker . . . unless such person was duly licensed and registered hereunder as broker or salesperson at the time of offering to perform any such act or service or procuring any promise or contract for the payment of compensation for any such contemplated act or service.

63 P.S. § 455.302.

In **Boland v. Mullen**, 450 A.2d 749 (Pa. Super. 1982), this Court construed the substantively identical clause in the statutory predecessor to RELRA, which was known as the Real Estate Brokers License Act, 63 P.S. §§ 431-448. **Boland**, 450 A.2d at 750. The **Boland** plaintiff, an unlicensed real estate salesperson, referred a client to the defendant, a licensed real estate broker, for the client's purchase of a warehouse in exchange for a promise to split the resulting commission. **Id.** The defendant did not split the commission, and the plaintiff sued for breach of contract. **Id.** The case went to trial, a jury found for the plaintiff, and the defendant appealed. **Id.**

The **Boland** Court held that the plaintiff's lawsuit was barred by the following clause of the Real Estate Brokers License Act:

> [N]o action or suit shall be instituted, nor recovery therein be had, in any court of this Commonwealth by any person, copartnership, association or corporation for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this act to others than licensed real estate brokers, unless such person was duly licensed hereunder as real estate broker at the time of doing such act or the rendering of such service.[fn4]
>
> > [fn4] Real Estate Brokers License Act of May 1, 1929, P.L. 1216, § 16, as amended, 63 P.S. § 446. A similar prohibition is contained in Section 455.302 of the Real Estate Licensing Act of February 19, 1980, P.L. 15, No. 9, § 302, 63 P.S. § 455.302.

**Id.** at 751 & n.4 (formatting altered).

More recently, in **Meyer**, the appellant claimed that the trial court erred by holding that he could not obtain relief because he was not licensed under RELRA. **Meyer**, 756 A.2d at 68. The **Meyer** Court affirmed the trial court, reasoning that because the appellant was not licensed under RELRA, "Pennsylvania law clearly precludes any person from [recovery] if that person was required to be licensed pursuant to the Act, and was not so licensed at the time of the transaction[.]" **Id.** at 72.

Here, as Sellers and the trial court's opinion denying post-trial relief correctly noted, there is no evidence in the record that any broker, let alone a licensed broker, was involved in the agreement at issue. **See** Trial Ct. Op., 12/13/19, at 14. Buyers, similar to the plaintiffs in **Meyer** and **Boland**, cannot invoke RELRA for relief because no licensed broker was involved in the instant transaction. **See Meyer**, 756 A.2d at 72; **Boland**, 450 A.2d at 751 & n.4. Because no licensed broker was involved, Buyers cannot file a lawsuit, or otherwise recover, for any violation of RELRA. **See** 63 P.S. § 455.302; **see Meyer**, 756 A.2d at 72; **Boland**, 450 A.2d at 751 & n.4. Therefore, even assuming Sellers violated RELRA by not stating the "correct" zoning classification, the plain and unambiguous statutory language of Section 455.302 states Buyers cannot sue under RELRA. **See** 63 P.S. § 455.302;

**Phelps**, 190 A.3d at 1236.  Therefore, Buyers have no right to void the agreement under RELRA.[5]  **See** 63 P.S. § 455.302.

### Requirement for Accurate Zoning Classification

We briefly summarize Buyers' fourth argument, which is that 21 P.S. § 613.1 requires that an accurate zoning classification be stated in the agreement of sale.  Buyers' Brief at 29-30.

In **Trigg v. Children's Hosp. of Pittsburgh of UPMC**, 229 A.3d 260 (Pa. 2020), our Supreme Court noted:

> The issue of waiver presents a question of law, and, as such, our standard of review is *de novo* and our scope of review is plenary. As a general matter, it is axiomatic that issues not raised in lower courts are waived for purposes of appellate review, and they cannot be raised for the first time on appeal.  This is because, as our Court has oft reminded, issue preservation is foundational to proper appellate review.  Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity.  It also promotes the orderly and efficient use of judicial resources, ensures fundamental fairness to the parties, and accounts for the expense attendant to appellate litigation.

**Trigg**, 229 A.3d at 269 (citations omitted and formatting altered); **see generally** Pa.R.C.P. 227.1; Pa.R.A.P. 302(a) (stating, issues "not raised in the trial court are waived and cannot be raised for the first time on appeal").

---

[5] It is unnecessary to address the impact of the "as is" addendum for Buyers' third issue because Buyers have no recourse under RELRA.  Buyers also cannot rely on **Roddy** in support as trial court opinions are not binding precedent. **See Coleman v. Wyeth Pharma., Inc.**, 6 A.3d 502, 522 n.11 (Pa. Super. 2010) (holding trial court decisions, with few exceptions, are not binding on this Court).

Rule 227.1 provides:

(b) Except as otherwise provided by Pa.R.E. 103(a), post-trial relief may not be granted unless the grounds therefor,

(1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and

(2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

Pa.R.C.P. 227.1(b).

For example, in **Moure v. Raeuchle**, 604 A.2d 1003 (Pa. 1992), our Supreme Court held that the plaintiff waived the issue of negligence by not raising it in her post-trial motion. **Moure**, 604 A.2d at 1007-08. More recently, in **Brown v. Halpern**, 202 A.3d 687 (Pa. Super. 2019), *appeal denied*, 217 A.3d 207 (Pa. 2019), *and appeal denied*, 217 A.3d 809 (Pa. 2019), this Court similarly held that the appellants waived certain issues for appellate review because they raised those issues for the first time in a post-trial motion, rather than at trial. **Brown**, 202 A.3d at 697. Finally, raising an issue in a post-trial brief that was not raised in the post-trial motion does not preserve the issue for appellate review. **See Siculietano v. K & B Amusements Corp.**, 915 A.2d 130, 132 n.2 (Pa. Super. 2006).

Here, Buyers never raised 21 P.S. § 613.1 at trial. We agree with the trial court that "Buyers waived this issue because they did not raise that statute at trial." **See** Trial Ct. Op., 12/13/19, at 7; Pa.R.C.P. 227.1(b)(1);

*Trigg*, 229 A.3d at 269.  Further, Buyers did not raise Section 613.1 in their post-trial motion, which also results in waiver.  *See Moure*, 604 A.2d at 1007-08; *Brown*, 202 A.3d at 697.  Finally, Buyers' discussion of Section 613.1 in their brief in support of their post-trial motion also did not preserve their claim for appellate review, particularly since they never raised Section 613.1 at trial.  *See* Pa.R.C.P. 227.1; *Siculietano*, 915 A.2d at 132 n.2.  For these reasons, Buyers waived the issue for appellate review.  *See* Pa.R.A.P. 302(a).

### The "As Is" Addendum

Before summarizing Buyers' fifth argument, we quote the relevant part of the "as is" clause in the addendum:

> Seller is selling and the Buyer is buying the property in an **"AS IS" CONDITION WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE.**[]
>
> It is understood and agreed that the Property is being purchased in its "as is" condition.  The Seller . . . make[s] no representations, warranties or guarantes of any kind whatsoever including, but not limited to: . . . zoning . . . .  Buyer agrees to indemnify and hold harmless Seller . . . .  Furthermore, Seller is not responsible for nor obligated to provide or perform any certifications and inspections. . . .
>
> In the event any provision of this Addendum conflicts in whole or in part with the terms contained in the main body of the Agreement . . . the provisions of this Addendum shall control and the conflicting terms in the Agreement are hereby considered deleted and expressly waived by both Buyer and Seller.

Ex. A to Am. Compl. (emphasis in original).  The entire addendum was executed contemporaneously with the agreement at issue.  *Id.*

- 13 -

Buyers claim that the "as is" clause in the addendum does not supersede or negate "the express warranty of the zoning classification" and Buyers' right to rescind the agreement. Buyers' Brief at 31. Buyers assert that they were "entitled to reply upon" Sellers' representation of the zoning classification. *Id.* at 32. In Buyers' view, it was only because of Sellers' representation that Buyers agreed to the "as is" addendum and waived "the right to further investigation" of the zoning classification. *Id.* Buyers maintain that the "as is" addendum "did not negate the explicit representation of the zoning classification" and "Buyers were entitled to rely upon it." *Id.* at 33. In support, Buyers rely on *Juniata Valley Bank v. Martin Oil Co.*, 736 A.2d 650 (Pa. Super. 1999). *Id.* at 34.

Here, in concluding that the "as is" clause voided the agreement, the trial court reasoned as follows:

> Paragraph 6 did, in fact, state that the zoning classification was "W80 Apartment." The clear language of the ["as is" clause], however, stated that Sellers were not making any representations or warranties of any kind or nature regarding zoning. Crucially, the conflicting zoning term in Paragraph 6 was "hereby considered deleted and expressly waived by both Buyer and Seller." Although the "W80 Apartment" classification was deemed deleted by the ["as is" clause], the remaining text of Paragraph 6 remained in full force and effect. The end result of the ["as is" clause] was to remove the zoning classification in Paragraph 6, which triggered the voidable nature of the contract because of the "[f]ailure of this Agreement to contain the zoning classification."

Trial Ct. Op., 3/9/20, at 7. In sum, the trial court held that because the "as is" clause "deleted" a required term in the agreement, the entire agreement was voidable. *Id.*

- 14 -

Our review of the record confirms that although the trial court initially denied Buyers' post-trial motion, the trial court issued a Rule 1925(a) opinion concluding that Buyers were entitled to relief. *See id.* Therefore, Sellers did not have an opportunity to challenge the trial court's reasoning before Buyers appealed. *Cf. DiGregorio v. Keystone Health Plan E.*, 840 A.2d 361, 367 (Pa. Super. 2003) (holding that if trial court's order was construed as a grant of an oral motion for summary judgment, the appellant did not waive its arguments when it was not given opportunity to file a responsive brief in opposition). Therefore, under the circumstances of this case, and to ensure that the parties have the opportunity to properly raise and preserve any arguments for appellate review, we vacate the judgment and order the trial court to issue a new decision limited to the issue of whether the "as is" clause "deleted" a required term in the agreement, rendering the entire agreement voidable. *See* 42 Pa.C.S. § 706 (stating that "[a]n appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances"). On remand, the parties may then file post-trial motions and appeal, if necessary.[6]

---

[6] In sum, although we vacate the judgment, we agree with the trial court's disposition of Buyers' RELRA and Section 613.1 claims presented in their appellate issues, one through four. Further, because of our disposition of

*(Footnote Continued Next Page)*

- 15 -

Judgment vacated. Case and record remanded for further proceedings as set forth above. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *7/7/2021*

---

Buyers' fifth issue, we need not address their sixth issue, which was that the trial court erred in finding for Sellers.

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CIVIL TRIAL DIVISION**

| | | |
|---|---|---|
| **MOSHE ARBIV, et al.** | : | **MARCH TERM, 2018** |
| | : | |
| vs. | : | **No. 00011** |
| | : | |
| **YEHUDA EVRON, et al.** | : | **Superior Court Docket No. 340 EDA 2020** |

<u>**Pa.R.A.P. 1925(b) OPINION**</u>

**Lachman, J.**                                                        **March _7_ , 2020**

Upon further review of the issues in this case, the court finds that it erred in this non-jury trial by finding for the Defendants/Appellees Yehuda Evron, Diane Hart, Paul Pinski, Abilo Costeria, Carmine Fazzolari, Kenneth Holland (Sellers) and against Plaintiffs/Appellants Moshe Arbiv, Zuriel Nagar, and David Lachner (Buyers). The court should have granted the Appellants' post-trial motion for a judgment notwithstanding the verdict. Therefore, the Superior Court should reverse the judgment in favor of the Appellees and remand for the entry of a JNOV in favor of the Appellants.

## I. Factual and Procedural Background

This is a breach of contract action arising out of an agreement of sale (Agreement) for "1412-14 W. Tioga Street 11c" in Philadelphia, entered into by the Plaintiffs/Appellants (Buyers) and the Defendants/Appellees (Sellers). Attached to the Agreement was a document entitled "AS-IS Addendum to AGREEMENT OF SALE" (Addendum). The Buyers' representative signed the Agreement and the Addendum on September 11, 2017, and the Sellers signed both documents on September 12, 2017. After signing the documents, the Buyers placed a total of $55,000 in escrow with City Line Abstract Company, as required by paragraph 2(A) of the Agreement and a separate

1


Arbiv Etal Vs Evron Etal-OPFLD
1803000110064

addendum/endorsement dated October 27, 2017. Exhibits "A" and "B" to buyers' complaint.

At issue is the representation in paragraph 6 of the Agreement as to the zoning classification for the property:

> Zoning (14).
>
> Failure of this Agreement to contain the zoning classification (except in cases where the property [and each parcel thereof if sub-dividable] is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
>
> Zoning classification, as set forth in the local zoning ordinances W80 Apartment.

This rather straight-forward provision, however, is expressly contradicted by the terms of the Addendum, which state:

> Seller is selling and the buyer is purchasing the property in an **"AS IS" CONDITION <u>WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE.</u>**
>
> It is understood and agreed that the Property is being purchased in its "as is" condition. The Seller, Seller's Agent(s), their employees, salespeople, officers and/or partners <u>make no representation, warranties or guarantees of any kind whatsoever including, but not limited to</u>: habitability, legality of use, <u>zoning</u> or condition with regard to the Property.
>
> ＊ ＊ ＊ ＊ ＊
>
> In the event any provision of this Addendum conflicts in whole or in part with the terms contained in the main body of the Agreement or any addendum or rider attached thereto, <u>the provisions of this Addendum shall control and the conflicting terms in the Agreement are hereby considered deleted and expressly waived by both Buyer and Seller.</u>

Bolded emphasis and capitals in the original, underlined emphasis added.

2

On or about November 20, 2017, buyers learned that the property is actually zoned RSA-3 under the Philadelphia Zoning Ordinance. On November 20, 2017, Buyers' attorney sent the Sellers a letter informing them of the Agreement's inaccurate zoning classification of the property. The Buyers notified Sellers they were electing to declare the Agreement void pursuant to paragraph 6 of the Agreement and requested the return of the escrowed funds. Sellers have refused to release the escrowed funds, despite Buyers repeated demands.

Buyers began this action on March 2, 2018, by filing a complaint. Service of the complaint was accomplished on all of the Sellers except Sean P. Mays, Esquire. An amended complaint was filed on May 29, 2018, to which the six Sellers who had been served, filed untimely preliminary objections on July 23, 2018. Judge Paula Patrick overruled the preliminary objections in an order docketed on September 20, 2018. Judge Patrick ordered the Sellers to file answers to the amended complaint within twenty days from the date the order was docketed.

The six Sellers filed an untimely answer to the Buyers' complaint with new matter on February 6, 2019. Buyers filed a motion to strike the answer and new matter, which Judge Patrick granted on March 27, 2019.

Trial in this non-jury case occurred on April 11, 2019. At the outset, Defendant Mays was dismissed from the case because he had never been served with original process. Tr. 4/11/19 pp. 6, 8, 9-11. He remained in the courtroom and was later called as a defense witness.

Buyers presented a copy of their complaint with attachments that included the Agreement and Addendum. They asked the court to "take judicial notice of the well pled

3

averments of the complaint and the lack of any answer." The court agreed and Buyers rested. Tr. 4/11/19 pp. 22, 24. The court denied the Sellers' request for a nonsuit. *Id.*, p. 34. Mr. Mays briefly testified as a defense witness. His testimony was inconsequential.

The parties then argued the legal operation and effect of the Agreement and Addendum. At the conclusion of the arguments, the court found in favor of the Sellers and delivered this explanation from the bench:

> THE COURT: The Court has reviewed the complaint to determine which, if any, paragraphs of the complaint were conclusions of law to which an answer was not required, and to review the -- the Court has also reviewed the agreement of sale.
>
> It is clear that the agreement of sale, which was attached to the complaint, indicates that both parties -- both sides signed the contract through their representatives. The buyer signed the contract and the as-is addendum on September 11th, 2017, and the seller signed on September 12th, 2017. The date of the agreement in the first paragraph is September 11, 2017.
>
> The parties are presumed to have read and understood the contract before they signed it. The law does not protect parties from signing ill-advised documents. There have been no allegations in this matter or evidence to establish that there was fraud, mistake or duress in the signing of the contracts. The as-is provision -- well, let me back up.
>
> The contract provision at issue has been read into the record and I am not going to read it again. And there does not seem to be any dispute that there was a difference between what was written into the contract -- or the agreement of sale, rather, and the actual zoning of the property.
>
> But the as-is addendum states, and I quote: Seller is selling and the buyer is purchasing the property in an, quote, capital letters, as-is, closed quote, capital letters continuing, condition without representations or warranties of any nature, closed quote again.
>
> Then in normal font: It is understood and agreed that the property is being purchased in its, quote, as-is, closed quote, condition. The seller, seller's agent, parenthesis, S, closed parenthesis, their employees, sales people, officers and/or partners make no representations, warranties or

4

guarantees of any kind whatsoever, including, but not limited to, colon, habitability, legality of use, zoning or condition with regard to the property.

There are several sentences that follow dealing with the seller not making repairs and not being responsible for repairs.

The next paragraph begins: In the event any provision of this addendum conflicts in whole or in part with the terms contained in the main body of the agreement or any addendum or rider attached thereto, the provisions of this addendum shall control and the conflicting terms in the agreement are hereby considered deleted and expressly waived by both buyer and seller.

The Court finds that the as-is agreement -- I am sorry, the as-is addendum to the agreement of sale specifically excludes any -- the representations as to zoning -- and by virtue of the last paragraph that I read, deems that paragraph in the contract to be deleted and waived by both parties.

Therefore, the Court finds no reason to set aside this agreement of sale, as requested by the plaintiff, or the return of the funds on the basis of paragraph six, and the finding of the Court is in favor of the defense.

Tr. 4/11/19 pp. 46-49.

The court announced her decision on April 11, 2019 in open court with the parties' attorneys present. On April 16th, Buyers filed a "Motion to Supplement the Record" that attached copies of 63 P.S. §455.608b (Real Estate Licensing and Registration Act, Duties of Licensees), and 49 Pa.Code § 35.333 (Agreements of Sale). That motion was never assigned to this judge. It was administratively disposed of by the entry of the court's decision and trial worksheet on the docket on April 17th.

Buyers filed a timely post-trial motion on April 24th, and a timely amended post-trial motion on April 26th. The court struck as moot the original post-trial motion on May 6, 2019.[1]

---

[1] The original and amended post-trial motions were timely. See, **Papalia v. Montour Auto Service Co.,** 682 A.2d 343, 345 (Pa. Super. 1996) (a post-trial motion

5

The court denied the Buyers' amended post-trial motion on December 13, 2019,

and filed an opinion that same day. A copy of the opinion is attached hereto.

## II. Discussion

### A. Standard and scope of review.

> [T]he interpretation of any contract is a question of law and this Court's
> scope of review is plenary. Moreover, we need not defer to the conclusions
> of the trial court and are free to draw our own inferences. In interpreting a
> contract, the ultimate goal is to ascertain and give effect to the intent of the
> parties as reasonably manifested by the language of their written
> agreement. When construing agreements involving clear and unambiguous
> terms, this Court need only examine the writing itself to give effect to the
> parties' understanding. This Court must construe the contract only as
> written and may not modify the plain meaning under the guise of
> interpretation.

*Front St. Dev. Assocs., L.P. v. Conestoga Bank*, 161 A.3d 302, 310 (Pa. Super. 2017)

(citations omitted).

### A. The effect of the Addendum was to trigger the provision to void the Agreement in Paragraph 6.

Paragraph 6 of the Agreement allowed the Buyers to declare the Agreement void

if the Agreement failed to contain the zoning classification for the property.

> Failure of this Agreement to contain the zoning classification (except in
> cases where the property [and each parcel thereof if sub-dividable] is zoned
> solely or primarily to permit single-family dwellings) will render this
> Agreement voidable at Buyer's option, and, if voided, any deposits tendered
> by the Buyer will be returned to the Buyer without any requirement for court
> action.

---

was timely filed because the ten-day period for filing a post-trial motion began upon the
actual docketing of the Philadelphia Civil Trial Worksheet indicating the order granting the
nonsuit in a non-jury case and *not* upon the announcement of the nonsuit by the court).

Paragraph 6 did, in fact, state that the zoning classification was "W80 Apartment." The clear language of the Addendum, however, stated that Sellers were not making any representations or warranties of any kind or nature regarding zoning. Crucially, the conflicting zoning term in Paragraph 6 was "hereby considered deleted and expressly waived by both Buyer and Seller." Although the "W80 Apartment" classification was deemed deleted by the Addendum, the remaining text of Paragraph 6 remained in full force and effect. The end result of the Addendum was to remove the zoning classification in Paragraph 6, which triggered the voidable nature of the contract because of the "[f]ailure of this Agreement to contain the zoning classification."

Buyers elected to void the contract and demanded the return of the $55,000 they had placed into escrow. Paragraph 6 required the Sellers to return that money "without any requirement for court action." Sellers' failure to return the money upon demand was a material breach of the Agreement which required the court to find in favor of the Buyers and against the Sellers at trial.

## B. Other issues in Buyers' Pa.R.A.P. 1925(b) statement.

In the post-trial motion opinion, this court held that the statutes and regulation relied upon by the Buyers either were waived or did not apply to this case. See pages 11-18. This court reaffirms those conclusions; however, they are moot in light of the court's reappraisal of the effect of the Addendum upon Paragraph 6.

Paragraph 5 of Buyers' Pa.R.A.P. 1925(b) statement contends that "The Trial Court erred in failing to rule in favor of Plaintiffs after all the averments of the Complaint were deemed admitted by Court Order." Both sides agreed with the facts set forth in

7

the complaint. They disagreed about the proper legal construction of the Agreement and Addendum. See Tr. 4/11/19 pp. 14, 16.

Buyers' counsel argued that by failing to file an answer to the complaint, the Sellers were barred from disputing Buyers' legal interpretation of the Agreement and Addendum. *Id.* p. 15. However, "[t]he interpretation of any contract is a question of law" -- not fact – for the *court* to resolve. *Sw. Energy Prod. Co. v. Forest Res., LLC,* 83 A.3d 177, 187 (Pa. Super. 2013) (citation omitted). "The failure to file a responsive pleading when a responsive pleading is required by the rules results only in the admission of factual averments, not legal conclusions." *Cagnoli v. Bonnell,* 611 A.2d 1194, 1197 (Pa. 1992).

Buyers erroneously equate the order striking Sellers' answer and new matter with an order precluding the Sellers from putting on any defense. The two are entirely different. Sellers correctly argued that an allegation that Sellers breached the contract was a conclusion of law. Tr. 4/11/19 p. 22. The court stated, "[w]e're now dealing with the legal conclusions, to which no answer was required, namely that there was a breach of contract." *Id.* pp. 22-23. Consequently, the mere fact that the Sellers' answer and new matter was stricken did not prevent them from arguing the legal effect of the Agreement and Addendum.

Paragraph 4 of Buyers 1925(b) statement claims that 63 P.S. § 455.608b(3) or 49 Pa.Code § 35.333, could not be waived. This claim is itself waived and is substantively without merit. The waiver of the statute and regulation and their inapplicability to this case, however, does not change the text of Paragraph 6 which sets forth a clear and unambiguous remedy for failure to state the zoning classification.

8

Buyers failed to develop an appropriate argument on the issue of the nonwaivability and thereby waived that issue.[2] Neither of the two cases they cited had anything to do with nonwaivability. See pages 14-15 of the court's original opinion, discussing *Meyer v. Gwynedd Development Group,* 756 A.2d 67 (Pa. Super. 2000), and *Roddy, Inc. v. Thackray Crane Rental Inc.,* No. 1566 May Term 2001, 2001 WL 1807953, at *1 (C.P. Phila. Sept. 10, 2001), *aff'd sub nom. without published opinion, Roddy, Inc. v. Thackray Crane Rental,* 803 A.2d 804 (Pa. Super. 2002) (Table). *See, Coulter v. Ramsden,* 94 A.3d 1080, 1088-89 (Pa. Super. 2014) (internal citations, quotation marks, and brackets omitted) ("arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention. This Court will not act as counsel and will not develop arguments on behalf of an appellant....mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter."); *Price v. Pa. Prop. & Cas. Ins. Guar. Ass'n,* 795 A.2d 407, 412 (Pa. Super. 2002) ("Because the Prices fail to develop analysis supporting their argument or present authority demonstrating their right to relief, we conclude that their third argument is without merit.").

---

[2] *See, Browne v. Commonwealth, Department of Transportation,* 843 A.2d 429, 434-435 (Pa. Cmwlth. 2004) (a one-paragraph argument in a party's post-trial motion brief that cursorily discusses an issue without analysis of relevant authority does not satisfy the requirement of briefing and arguing an issue envisioned by Pa.R.C.P. 227.1, resulting in waiver of the issue). The court will not act as counsel and will not develop arguments on behalf of a litigant. *Irwin Union Nat. Bank & Trust Co. v. Famous,* **4 A.3d 1099, 1103 (Pa. Super. 2010).**

9

Substantively, the clear and unambiguous language of the Addendum shows an unequivocal, definite and clear agreement by the Buyers and the Sellers, and meets the standard for a waiver of legal rights.

"A waiver in law is the act of intentionally relinquishing or abandoning some known right, claim or privilege." *Com. ex rel. Pa. Att'y Gen. Corbett v. Griffin,* 946 A.2d 668, 679 (Pa. 2008). Even constitutional rights may be waived. *Com. ex rel. Robinson v. Myers,* 215 A.2d 637, 640 (Pa. 1966) (right to assistance of counsel). An agreement to waive a legal right, "if founded on a good consideration, is undoubtedly binding." *Tagg v. Bowman*, 108 Pa. 273, 277 (1885). Buyers have never alleged or proven that the terms of the Addendum were not supported by "good consideration."

"To constitute a waiver of legal right, there must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it." *Griffin,* 946 A.2d at 679 (decision of attorney general and county district attorney to defer to Judicial Conduct Board the instituting of legal proceedings seeking removal of judge, under constitutional provision prohibiting those convicted of infamous crime from holding public office, did not waive their right to institute quo warranto proceedings should the Board be unwilling or unable to act), *quoting Brown v. City of Pittsburgh,* 186 A.2d 399, 401 (Pa. 1962) (fact that church had paid pedestrian $2,000 in settlement of her claims against church for injuries sustained in fall on sidewalk, did not mislead city to its prejudice or cause change in city's position, and, therefore, church did not, as to city, waive its right to assert defense of charitable immunity).

"Waiver may be established by a party's **express declaration** or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract

10

provisions as to leave no opportunity for a reasonable inference to the contrary."

*MetroClub Condo. Ass'n v. 201-59 N. Eighth St. Assocs., L.P.,* 47 A.3d 137, 154 (Pa. Super. 2012) (emphasis added) (defendant did not waive its right to allocate any of the remaining 41 unallocated assigned parking spaces because it failed to do so prior to the termination of the declarant control period; plaintiff did not identify any act or language on defendant's part indicating its intent to relinquish any rights under section 5.03 of the declaration), *quoting Prime Medica Assocs. v. Valley Forge Ins. Co.,* 970 A.2d 1149, 1156–1157 (Pa. Super. 2009) (citations omitted) (property insurer did not waive suit limitations provision in policy as a defense to insured's suit for breach of policy in denying coverage; insurer sent insured four separate letters within limitations period, referencing in each letter the importance and requirements of the limitations provision, and insured failed to request any relief from or extension of that provision).

Buyers utterly failed to set forth any pertinent cases or other authority to support their argument that the statutes and regulation they rely upon could not be waived. They also failed to allege or provide any argument demonstrating that public policy bars such a waiver. *Compare* the discussion of public policy in *Resolute Ins. Co. v. Pennington,* 224 A.2d 757, 760-761 (Pa. 1966) (public policy barred waiver of the protection of statute exempting proceeds of life insurance from beneficiary's debts from levy or attachment).

### III. Conclusion

The Superior Court should reverse the trial court's decision in favor of the Defendants/Appellees Yehuda Evron, Diane Hart, Paul Pinski, Abilo Costeria, Carmine Fazzolari, Kenneth Holland, and against Plaintiffs/Appellants Moshe Arbiv, Zuriel Nagar,

11

and David Lachner, and remand this case to the trial court to enter judgment in favor of the Buyers.

BY THE COURT:

LACHMAN, J.

# Trial Court Opinion
# dated December 13, 2019.

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

MOSHE ARBIV, et al.

vs.

YEHUDA EVRON, et al.

:  MARCH TERM, 2018
:
:  No. 00011
:
:  CONTROL No. 19043656

## O R D E R

AND NOW, this *13* day of December, 2019, upon consideration of the Plaintiffs'

Amended Post-Trial Motion for Relief and the response from the Defendants thereto, it is

hereby **ORDERED** and **DECREED** that the Motion is **DENIED.** Judgment is hereby

entered on the nonjury verdict in favor of the Defendants Yehuda Evron, Diane Hart, Paul

Pinski, Abilo Costeria, Carmine Fazzolari, Kenneth Holland, and Sean P. Mays, Esquire,

and against Plaintiffs Moshe Arbiv, Zuriel Nagar, and David Lachner.

A separate Opinion is being filed with this Order.

BY THE COURT:

Arbiv Etal Vs Evron Eta-ORDOP

LACHMAN, J.

18030001100054

MOSHE ARBIV, et al.             :     MARCH TERM, 2018

                              :     No. 00011

      vs.                       :     CONTROL No. 19043656

YEHUDA EVRON, et al.            :

## OPINION

December /3 , 2019

**Lachman, J.**

In a separate order, this court denied the Plaintiffs' Amended Motion for Post-Trial Relief and entered judgment on the court's nonjury decision in favor of the Defendants Yehuda Evron, Diane Hart, Paul Pinski, Abilo Costeria, Carmine Fazzolari, Kenneth Holland, and Sean P. Mays, Esquire, and against Plaintiffs Moshe Arbiv, Zuriel Nagar, and David Lackner. This Opinion sets forth the reasons for the court's order.

## I. Factual and procedural background.

This is a breach of contract action arising out of an agreement of sale (Agreement) for "1412-14 W. Tioga Street 11c" in Philadelphia, entered into by the Plaintiffs (Buyers) and the Defendants (Sellers). Attached to the Agreement was a document entitled "AS-IS Addendum to AGREEMENT OF SALE" (Addendum). The Buyers' representative signed the Agreement and the Addendum on September 11, 2017, and the Sellers signed both documents on September 12, 2017. After signing the documents, the Buyers placed a total of $55,000 in escrow with City Line Abstract Company.

At issue is the representation in paragraph 6 of the Agreement as to the zoning classification for the property:

1

Zoning (14).

Failure of this Agreement to contain the zoning classification (except in cases where the property [and each parcel thereof if sub-dividable] is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.

Zoning classification, as set forth in the local zoning ordinances W80 Apartment.

This rather straight-forward provision, however, is expressly contradicted by the terms of the Addendum, which state:

> Seller is selling and the buyer is purchasing the property in an **"AS IS" CONDITION WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE.**
>
> It is understood and agreed that the Property is being purchased in its "as is" condition. The Seller, Seller's Agent(s), their employees, salespeople, officers and/or partners make no representation, warranties or guarantees of any kind whatsoever including, but not limited to: habitability, legality of use, zoning or condition with regard to the Property.
>
> ＊ ＊ ＊ ＊ ＊
>
> In the event any provision of this Addendum conflicts in whole or in part with the terms contained in the main body of the Agreement or any addendum or rider attached thereto, the provisions of this Addendum shall control and the conflicting terms in the Agreement are hereby considered deleted and expressly waived by both buyer and Seller.

Bolded emphasis and capitals in the original, underlined emphasis added.

On or about November 20, 2017, buyers learned that the property is actually zoned RSA-3 under the Philadelphia Zoning Ordinance. On November 20, 2017, Buyers' attorney sent the Sellers a letter informing them of the Agreement's inaccurate zoning classification of the property. The Buyers notified Sellers they were electing to declare the Agreement void pursuant to paragraph 6 of the Agreement and requested the return

2

of the escrowed funds. Sellers have refused to release the escrowed funds, despite Buyers repeated demands.

Buyers began this action on March 2, 2018, by filing a complaint. Service of the complaint was accomplished on all of the Sellers except Sean P. Mays, Esquire. An amended complaint was filed on May 29, 2018, to which the six Sellers who had been served, filed untimely preliminary objections on July 23, 2018. Judge Paula Patrick overruled the preliminary objections in an order docketed on September 20, 2018. Judge Patrick ordered the Sellers to file answers to the amended complaint within twenty days from the date the order was docketed.

The six Sellers filed an untimely answer to the Buyers' complaint with new matter on February 6, 2019. Buyers filed a motion to strike the answer and new matter, which Judge Patrick granted on March 27, 2019.

Trial in this non-jury case occurred on April 11, 2019. At the outset, Defendant Mays was dismissed from the case because he had never been served with original process. Tr. 4/11/19 pp. 6, 8, 9-11. He remained in the courtroom and was later called as a defense witness.

Buyers presented a copy of their complaint with attachments, and asked that the court "take judicial notice of the well pled averments of the complaint and the lack of any answer." The court agreed and Buyers rested. Tr. 4/11/19 pp. 22, 24. The court denied the Sellers' request for a nonsuit. Id., p. 34. Mr. Mays briefly testified as a defense witness. His testimony was inconsequential. The parties then argued the legal operation and effect of the Agreement and Addendum.

One of the legal issues that arose was whether the law required that an agreement to sell real property must include the zoning classification for the property.

Buyers' counsel, Andrew L. Miller, argued:

> Now, the Court asked at the outset, well, isn't that a matter of public record? Sure it is. But the contract says and the law requires, Your Honor, that the zoning of a property, except a single family residential property, must be disclosed. And the agreement says if it's not, then the agreement is terminable and that the money shall be returned without court proceedings.
>
> Here we are.
>
> THE COURT: You say the law requires that the zoning of a property, other than single family residential, must be disclosed.
>
> What law are you relying upon?
>
> MR. MILLER: I don't have the statute handy, but there's a law that requires that. And it's not waivable. That's why the agreements have that language.
>
> But I apologize. I don't have the statute handy. I may have it in my file.

Tr. 4/11/19 p. 31. Mr. Miller looked in his file and was unable to produce a copy of the statute. Id., p. 32. Mr. Mays then volunteered:

> MR. MAYS: It's in the regulations, the department of state regulations governing brokers. It's not a separate statute, per se. So the regulations governing brokers, which is why the PA Association of Realtors has it in there. So it's in the PA code in the section governing real estate brokers.
>
> MR. MILLER: I have no reason to dispute that, Your Honor.
>
> MR. STANWOOD [defense counsel]: The only thing I would add, Your Honor, is it may only apply to residential agreements of sale anyway, and we have a commercial agreement here.

Tr. 4/11/19 pp. 32-33.

4

In closing arguments, Buyers asserted that paragraph 6 of the Agreement governed and that the contrary language in the Addendum made the entire contract absurd. Sellers argued that the entire contract must be considered and that the Addendum is as much a part of the contract as is paragraph 6, and that the language in the Addendum is clear and unambiguous.

The court found in favor of the Sellers and delivered this explanation from the bench:

THE COURT: The Court has reviewed the complaint to determine which, if any, paragraphs of the complaint were conclusions of law to which an answer was not required, and to review the -- the Court has also reviewed the agreement of sale.

It is clear that the agreement of sale, which was attached to the complaint, indicates that both parties -- both sides signed the contract through their representatives. The buyer signed the contract and the as-is addendum on September 11th, 2017, and the seller signed on September 12th, 2017. The date of the agreement in the first paragraph is September 11, 2017.

The parties are presumed to have read and understood the contract before they signed it. The law does not protect parties from signing ill-advised documents. There have been no allegations in this matter or evidence to establish that there was fraud, mistake or duress in the signing of the contracts. The as-is provision -- well, let me back up.

The contract provision at issue has been read into the record and I am not going to read it again. And there does not seem to be any dispute that there was a difference between what was written into the contract -- or the agreement of sale, rather, and the actual zoning of the property.

But the as-is addendum states, and I quote: Seller is selling and the buyer is purchasing the property in an, quote, capital letters, as-is, closed quote, capital letters continuing, condition without representations or warranties of any nature, closed quote again.

Then in normal font: It is understood and agreed that the property is being purchased in its, quote, as-is, closed quote, condition. The seller, seller's agent, parenthesis, S, closed parenthesis, their employees, sales

5

people, officers and/or partners make no representations, warranties or guarantees of any kind whatsoever, including, but not limited to, colon, habitability, legality of use, zoning or condition with regard to the property.

There are several sentences that follow dealing with the seller not making repairs and not being responsible for repairs.

The next paragraph begins:  In the event any provision of this addendum conflicts in whole or in part with the terms contained in the main body of the agreement or any addendum or rider attached thereto, the provisions of this addendum shall control and the conflicting terms in the agreement are hereby considered deleted and expressly waived by both buyer and seller.

The Court finds that the as-is agreement -- I am sorry, the as-is addendum to the agreement of sale specifically excludes any -- the representations as to zoning -- and by virtue of the last paragraph that I read, deems that paragraph in the contract to be deleted and waived by both parties.

Therefore, the Court finds no reason to set aside this agreement of sale, as requested by the plaintiff, or the return of the funds on the basis of paragraph six, and the finding of the Court is in favor of the defense.

Tr. 4/11/19 pp. 46-49.

The court's decision was placed on the docket on April 17, 2019.  Buyers filed a timely post-trial motion on April 24th, and a timely amended post-trial motion on April 26th.

The court struck as moot the original post-trial motion on May 6, 2019.[1]

---

[1] The original and amended post-trial motions were timely.  See, *Papalia v. Montour Auto Service Co.,* 682 A.2d 343, 345 (Pa. Super. 1996) (a post-trial motion was timely filed because the ten-day period for filing a post-trial motion began upon the actual docketing of the Philadelphia Civil Trial Worksheet indicating the order granting the nonsuit in a non-jury case and *not* upon the announcement of the nonsuit by the court).

6

## II. Discussion

### A. The court correctly interpreted the Agreement of Sale and the Addendum.

"The interpretation of any contract is a question of law." *Sw. Energy Prod. Co. v. Forest Res., LLC,* 83 A.3d 177, 187 (Pa. Super. 2013) (citation omitted). None of the parties contended that either paragraph 6 of the Agreement or the terms of the Addendum were ambiguous or unclear. Consequently,

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. "When a writing is clear and unequivocal, its meaning must be determined by its contents alone."

*Ferrer v. Trustees of the Univ. of Pa.,* 825 A.2d 591, 608 (Pa. 2002) (citation omitted).

By signing the Addendum, the Buyers agreed that the Sellers were making "no representation, warranties or guarantees of any kind whatsoever including, but not limited to ... zoning...." The buyers also agreed that the terms of the Addendum, "shall control and the conflicting terms in the Agreement are hereby considered deleted and expressly waived by both buyer and Seller." (Emphasis added.)

The Buyers cannot ignore these clear and unambiguous statements, however much they try. Because the Buyers voluntarily agreed that the terms of the Addendum supersede the terms of the Agreement, it is of no use for them to argue that the terms of the Addendum make the terms of the Agreement illusory. That is the bargain to which the Buyers agreed.

7

"The law of Pennsylvania is clear. One who is about to sign a contract has a duty to read that contract first." *In re Estate of Boardman,* 80 A.3d 820, 823 (Pa. Super. 2013) (citation omitted). "It is well established that, in the absence of fraud, the failure to read a contract before signing it is 'an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract'; it is considered 'supine negligence.'" Id., (citations omitted). Buyers did not present any evidence of fraud. "Not fully understanding the agreement is not the same as being defrauded." Id.

> It has been said that parties *sui juris* bind themselves by their lawful contracts, and courts cannot alter them because they work a hardship. The mere fact that the parties have made an improvident bargain will not lead a court to make unnatural implications or artificial interpretations. The court will not under the guise of interpretation write a new contract for the parties.

*Harnish v. Shannon,* 392 Pa. 419, 141 A.2d 347, 351 (1958) (citations omitted).

> [T]he law of contract does not and cannot take heed of emotions; otherwise, the emotions of the judge would ever be the deciding factor and chaos the result. The law demands of every man who bargains with another that he should do so only after due reflection of the possible consequences of his bargain and if he misjudges the consequences that could have been expected by a reasonably intelligent man, he cannot rely on the law to remedy his fecklessness. Absent some legally recognized infringement of the law of contract by one party, the law will not reform a written contract so as to make a contract for the parties that they did not make between themselves and certainly never to rescue a party who did not reasonably foresee the consequences of his bargain.

*New Charter Coal Co. v. McKee,* 191 A.2d 830, 833 (Pa. 1963).

> "[I]t is not the province of the court to alter a contract by construction or to make a new contract for the parties; its duty is confined to the interpretation of the one which they have made for themselves, without regard to its wisdom or folly."

>> [t]he court may not rewrite the contract for the purpose of accomplishing that which, in its opinion, may appear proper, or, on general principles of abstract justice ... make for [the parties] a better

8

contract than they chose, or saw fit, to make for themselves, or remake a contract, under the guise of construction, because it later appears that a different agreement should have been consummated in the first instance....

*Waggle v. Woodland Hills Ass'n, Inc.,* 213 A.3d 397, 407 (Pa. Cmwlth 2019), *quoting Steuart v. McChesney,* 444 A.2d 659, 661 (Pa. 1982). Here, as in *Waggle,* "the trial court limited its role to one of interpretation." *Id.*

The court correctly interpreted the terms of the Agreement and the Addendum.

## B. The Buyers failed to provide a complete record at trial.

Buyers complain in paragraph 2 of their amended post-trial motion:

The Court erred when it rendered its decision based upon an incomplete and inaccurate record. Specifically, Defendant Sean Mays, Esquire, an attorney, testified incorrectly that the requirement that the Agreement contain the language set forth in Paragraph 6 and include the correct zoning classification, is required only by regulation, when in fact that language is specifically required by statute, the Pennsylvania Real Estate Licensing and Registration Act, 63 P.S. Section 455.608(b).

This issue does not contest or even concern the text of the matter being discussed. Instead, Buyers assert that a new trial is necessary because Mr. Mays said the relevant text was in an administrative regulation instead of being in a statute. Buyers have not shown what possible difference that makes, especially since Buyers' attorney **agreed** with Mr. Mays's statements at trial. Tr. 4/11/19 p. 32.

If the record was incomplete or inaccurate, the fault is entirely that of Buyers' attorney. He did not have a copy of the statute when the court questioned him concerning it, and then he agreed with Mr. Mays's statements concerning the statute.

THE COURT: You say the law requires that the zoning of a property, other than single family residential, must be disclosed.

What law are you relying upon?

9

**MR. MILLER:** I don't have the statute handy, but there's a law that requires that. And it's not waivable. That's why the agreements have that language.

But I apologize. I don't have the statute handy. I may have it in my file.

Tr. 4/11/19 p. 31. Mr. Miller looked in his file and was unable to produce a copy of the statute. Id., p. 32. Mr. Mays then volunteered:

**MR. MAYS:** It's in the regulations, the department of state regulations governing brokers. It's not a separate statute, per se. So the regulations governing brokers, which is why the PA Association of Realtors has it in there. So it's in the PA code in the section governing real estate brokers.

**MR. MILLER: I have no reason to dispute that,** Your Honor.

Tr. 4/11/19 p. 32 (emphasis added).

The court announced her decision on April 11th in open court with Buyers' attorney present. On April 16th, Buyers filed a "Motion to Supplement the Record" that attached copies of 63 P.S. §455.608b (Real Estate Licensing and Registration Act, Duties of Licensees), and 49 Pa.Code § 35.333 (Agreements of Sale). That motion was never assigned to this judge. It was administratively disposed of by the entry of the court's decision and trial worksheet on the docket on April 17th.

The Buyers had the burden of proof at trial. By not being prepared with a copy of the statute he relied upon, Buyers' attorney failed to meet his burden of proof on that issue. He did not cure his failure by filing a post-trial motion to supplement the record. The record was closed, and the court's decision had been rendered.

Had Buyers' attorney proffered a copy of the statute during trial, it would have changed nothing because the statute did not apply to this case.

10

## C. The statutes and regulations relied on by the Buyers do not apply to this case.

### 1. 63 P.S. §455.608b of the RELRA and 49 Pa.Code § 35.333(a)(6) do not apply.

Buyers argue that the zoning classification was a mandatory, non-waivable term in real estate sales contracts by virtue of 63 P.S. §455.608b of the Real Estate Licensing and Registration Act (RELRA or Act), which pertains to the duties of licensees. That Act, however, applies only to the conduct of licensed real estate **brokers** or others acting in that capacity, and the record does not contain any evidence that any such persons were involved in the sale of this property.

"The primary purpose of RELRA's licensing requirements is 'to protect buyers and sellers of real estate, the most expensive item many persons ever buy or sell, from abuse *by persons engaged in the business.*'" *Ladd v. Real Estate Comm'n of Cmwlth,* 187 A.3d 1070, 1077 (Pa. Cmwlth 2018) (emphasis added, citation omitted).

The heart of the RELRA is the requirement that all persons engaged in the sale of real estate be licensed or registered with the state.

> § 455.301. Unlawful to conduct business without license or registration certificate
>
> It shall be unlawful for any person, directly or indirectly, to engage in or conduct, or to advertise or hold himself out as engaging in or conducting the business, or acting in the capacity of a broker or salesperson, cemetery broker, cemetery salesperson, campground membership salesperson, time-share salesperson, builder-owner salesperson, rental listing referral agent or cemetery company within this Commonwealth without first being licensed or registered as provided in this act, unless he is exempted from obtaining a license or registration certificate under the provisions of section 304.

63 P.S. § 455.301. Sections 455.511-592 set forth the licensure requirements for brokers and the other occupations mentioned in § 455.301.

11

Section §455.608b expressly concerns the duties of real estate ***brokers***:

§ 455.608b. Mandatory provisions of sales contract

In a sales agreement or sales contract, a ***broker*** shall disclose the following information which shall be disclosed in the manner and method the commission shall establish by regulation:

(1) A statement identifying the capacity in which the broker is engaged in the transaction and whether the broker, or any licensee affiliated with the broker, has provided services relating to the subject transaction to any other party to the transaction.

(2) A statement describing the purpose of the Real Estate Recovery Fund established under section 801 and the telephone number of the commission at which the parties to the transaction can receive further information about the fund.

(3) *A statement of the zoning classification of the property, except in cases where the property or each parcel of the property, if subdividable, is zoned solely or primarily to permit single-family dwellings. Failure to comply with this requirement shall render the sales agreement or sales contract voidable at the option of the buyer, and, if voided, any deposits tendered by the buyer shall be returned to the buyer without a requirement for court action.*

(4) A statement that access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

63 P.S. § 455.608b (emphasis added).[2]

---

[2] 49 Pa.Code § 35.333(a)(6) has a similar provision:

(a) An agreement of sale, other than for a cemetery lot, mausoleum or cremation space or opening, shall contain:

(6) The zoning classification of the property, except if the property (or each parcel thereof, if subdividable) is zoned solely or primarily to permit single-family dwellings, together with a statement that the failure of the agreement of sale to contain the zoning classification of the property shall render the agreement voidable at the option of the buyer and, if voided, deposits tendered by the buyer shall be returned to the buyer without a requirement of court action.

The RELRA defines "broker" as follows:

**"Broker."** <u>Any person who, for another and for a fee, commission or other valuable consideration</u>:

(1) negotiates with or aids any person in locating or obtaining for purchase, lease or an acquisition of interest in any real estate;

(2) negotiates the listing, sale, purchase, exchange, lease, time share and similarly designated interests, financing or option for any real estate;

(3) manages any real estate;

(4) represents himself to be a real estate consultant, counsellor, agent or finder;

(5) undertakes to promote the sale, exchange, purchase or rental of real estate: Provided, however, That this provision shall not include any person whose main business is that of advertising, promotion or public relations;

---

49 Pa. Code § 35.333(a)(6).

The only time this regulation is mentioned in Buyer's post-trial brief came after quoting the text of 63 P.S. § 455.608b(3): "The Pennsylvania Code, at Section 35.333 contains the parallel regulation. The statute is attached hereto as Exhibit '3' and the Regulation is Exhibit '4'. Buyers' brief p. 7.

Buyers waived consideration of the regulation because they failed to develop any argument concerning its applicability. *See, **Browne v. Commonwealth, Department of Transportation,*** 843 A.2d 429, 434-435 (Pa. Cmwlth. 2004) (a one-paragraph argument in a party's post-trial motion brief that cursorily discusses an issue without analysis of relevant authority does not satisfy the requirement of briefing and arguing an issue envisioned by Pa.R.C.P. 227.1, resulting in waiver of the issue); *Siculietano v. K & B Amusements Corp.,* 915 A.2d 130, 135 (Pa. Super. 2006) (finding issue waived for failure to develop argument where appellant merely made a "passing reference" to the issue); *Citizens Bank of Pennsylvania v. Myers*, 872 A.2d 827 (Pa. Super. 2005) (argument totaling three sentences is not adequately developed and is mere assertion of error). The court will not act as counsel and will not develop arguments on behalf of a litigant. *Irwin Union Nat. Bank & Trust Co. v. Famous,* 4 A.3d 1099, 1103 (Pa. Super. 2010).

13

(5.1) undertakes to perform a comparative market analysis; or

(6) attempts to perform any of the above acts.

63 P.S. § 455.201 (emphasis added). There is no evidence in the record that any of the Sellers or anyone else fit this definition of a "broker" by acting "for another and for a fee, commission or other valuable consideration."

## 2. The cases relied upon by the Buyers are inapt.

Buyers rely upon *Meyer v. Gwynedd Development Group,* 756 A.2d 67 (Pa. Super. 2000), and *Roddy, Inc. v. Thackray Crane Rental Inc.,* No. 1566 May Term 2001, 2001 WL 1807953, at *1 (C.P. Phila. Sept. 10, 2001), *aff'd sub nom. without published opinion, Roddy, Inc. v. Thackray Crane Rental,* 803 A.2d 804 (Pa. Super. Ct. 2002) (Table). Neither case applies to the present situation.

*Meyer* was an action by the marketing and sales director for a residential development builder against his employer to recover commissions. The Superior Court held that the director was a "builder-owner salesperson" and needed a license under the RELRA in order to sue. The Superior Court held that the RELRA does not contain an exception for estoppel that would permit *quantum meruit* relief for an unlicensed person to recover commissions. The present case is similar to *Meyer* only because in both cases, none of the parties were licensed brokers and the RELRA applies only to brokers.

*Roddy* was an action for a broker's commission arising out of an oral contract with a potential buyer for the sale of real estate. The case was dismissed on preliminary objections because the RELRA requires such contracts to be in writing. 63 P.S. § 455.606a(b). *Roddy* is inapt because Roddy was "an industrial and commercial real estate broker, licensed to do business under the laws of the Commonwealth of

14

Pennsylvania." 2001 WL 1807953, at *1. There is no evidence in the record of the present case that any of the Sellers were real estate brokers, licensed or unlicensed.

Buyers assert that "the *Roddy* and *Meyer* cases hold that the provisions of the RELRA may not be waived and contracts which violate its provisions will not be enforced regardless of the equities involved." Buyers' brief p. 10. There is no issue in the present case about "waiving" the requirements of the RELRA. The reason the Agreement of Sale and Addendum did not violate § 455.608b(3) of the RELRA, was because the Buyers did not present any evidence that any of the Sellers, or any other persons participating in this transaction, were brokers required to be licensed under the RELRA. Because the RELRA applies only to the conduct of brokers or persons acting in that capacity, 63 P.S. § 455.608b(3) did not apply to the conduct or actions of the Sellers in this case, including the contract at issue.

### 3. The provisions of 21 P.S. §§ 611-615 are waived. They would not apply to this case even if they were not waived.

Buyers' post-trial memorandum of law argues that sections 1-5 of the Act of July 27, 1955, P.L. 288, *as amended,* 21 P.S. §§ 611-615, apply to this case. Buyers waived this issue because they did not raise that statute at trial, did not include it in their motion to supplement the record, and failed to mention it in their amended post-trial motion for relief. Buyers' motion to supplement the record and their amended post-trial motion only mentioned 63 P.S. §455.608b (Real Estate Licensing and Registration Act, Duties of Licensees), and 49 Pa.Code § 35.333 (Agreements of Sale). Mention of 21 P.S. §§ 611-615 is entirely absent from either document. Consequently its applicability to this case is waived. *Siculietano v. K & B Amusements Corp.,* 915 A.2d 130, 132-133 (Pa. Super.

15

2006) (even though an issue was included in a brief in support of post-trial motions, the issue was waived because it was not specifically raised in the post-trial motion itself).

The provisions of 21 P.S. §§ 611–615 would not apply even if they were not waived. Buyers contend, incorrectly, that 21 P.S. § 613.1 supports their position. Section 613.1 provides as follows:

§ 613.1. Agreements of sale

(a) **Every owner shall insert in every agreement for the sale of property a provision showing the zoning classification of such property, and stating whether the present use of the property is in compliance with or in violation of zoning laws and ordinances,** and every owner shall insert in every agreement for the sale of property a provision disclosing whether there exists any notice of an uncorrected violation of the housing, building, safety or fire ordinances.

(b) **If any owner fails to include any provision required by this act in an agreement for the sale of property, then in any action, at law or in equity, instituted by a purchaser against an owner, it shall be conclusively presumed that the owner at the time of the signing of such agreement, represented and warranted to the purchaser that such property was being used in compliance with the then existing zoning laws and ordinances,** and that there was no uncorrected violation of the housing, building, safety or fire ordinances.

21 P.S. § 613.1 (emphasis by Buyers). *See generally, Levin v. St. Peter's School,* 578 A.2d 1349, 1354 (Pa. Cmwlth. 1990) (generally, when owner sells parcel of land, owner must deliver to purchaser certificate of zoning, issued by municipal officer, which acts as notice to purchaser indicating parcel's zoning classification and legality of its existing use; on other hand, purchaser retains duty to check parcel's zoning before completion of sale,

16

and cannot later advance lack of knowledge of parcel's zoning to support variance request).[3]

Buyers contend that 21 P.S. § 613.1 "prohibits a purchaser from waiving representation as to the applicable zoning and presumes that any representation made is correct. Conversely, if such representation proved incorrect, it is grounds to [*sic*] rescission of the agreement." Buyers' brief p. 13. The text of § 613.1 does not support the Buyers contentions and they fail to cite any other authority as support.

Section 613 is completely silent on the issues of waiver and rescission. The presumption in § 613.1(b) is the sole remedy for violating § 613.1(a) by not setting forth the zoning classification in the Agreement. Section 613.1(b) merely states that "in any action, at law or in equity, instituted by a purchaser against an owner, it shall be **conclusively presumed** that the owner at the time of the signing of such agreement, **represented and warranted to the purchaser that such property was being used in compliance with the then existing zoning laws and ordinances.**" Emphasis added.

The court had no difficulty reading and understanding paragraph 6 of the Agreement that clearly stated the zoning classification was "W80 Apartment." In an action for fraud, that misrepresentation and § 613.1(b) would be enough to prove a prima facie case.

This case, however, is an action for breach of contract and not one for fraud. The court was required to construe the **entire** contract between the parties, which included the Agreement **and** the Addendum. Section 613.1(b) does not prevent the Addendum

---

[3] Buyers did their due diligence. "We determined that the information they gave us was wrong and we backed out." Tr. 4/11/19 p. 45.

17

from revoking the zoning provision in paragraph 6 of the Agreement and does not require rescission.[4]

### D. The "as-is" issue is a red herring.

Buyers argue that the Addendum's use of "as-is" makes the contract void or voidable. This issue is a red herring. The court's decision rested on these provisions in the Addendum:

> ... The Seller, Seller's Agent(s), their employees, salespeople, officers and/or partners make no representation, warranties or guarantees of any kind whatsoever including, but not limited to: habitability, legality of use, zoning or condition with regard to the Property.

> \* \* \* \* \*

> In the event any provision of this Addendum conflicts in whole or in part with the terms contained in the main body of the Agreement or any addendum or rider attached thereto, the provisions of this Addendum shall control and the conflicting terms in the Agreement are hereby considered deleted and expressly waived by both buyer and Seller.

Emphasis added.

These provisions are separate and apart from those involving the "as-is" language in the Addendum. The first paragraph conflicts with the representations regarding zoning

---

[4] Section 613 makes it a crime to sell property without a certification of the zoning classification. Buyers cite § 615 which makes a violation of § 613 a misdemeanor, with a fine of not more than $1,000, or imprisonment for not more than one year, or both. They incorrectly state that § 615 applies to both § 613 and § 613.1. Buyers' brief p. 13 n.3.

> § 615. Penalties
> Any owner who violates the provisions of **section 3 of this act**[1] shall be guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to pay a fine of not more than one thousand dollars, or undergo imprisonment for not more than one year, or both.
> [1] **21 P.S. § 613.**

(Emphasis added.) These provisions have no application in the present civil case seeking return of Buyers' escrow money.

18

made in the Agreement. The second says the conflicting zoning representations in the Agreement are deleted and waived by the Buyers. The "as-is" issue is not relevant to this analysis.

### III. Conclusion.

For the foregoing reasons, the Buyers' post-trial motions were without merit and were denied by this court.

BY THE COURT:

_____
LACHMAN, J.

19